UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHONIQUE SANDERS AND RAKETA MCKAY )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>RITA M. CROTTY, ET AL. )<br>Defendants. ) | No. 06 C 5159<br><br>District Judge Joan B. Gottschall<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is Plaintiffs' Motion to Compel Discovery. [Dkt 63.] For the reasons set out below, the motion is granted, subject to a protective order. Defendants shall answer Plaintiffs' discovery regarding the location of the surveillance that defendants claim led to Plaintiffs' arrest, but that information shall be held "attorneys' eyes only" until further order of the court.

## PROCEDURAL BACKGROUND

In this action under 42 U.S.C. § 1983 and state law, plaintiffs Shonique Sanders and Raketa McKay (collectively, "Plaintiffs") allege that on July 9, 2006, they were in Sanders' recently purchased car, and had pulled over near West Grenshaw Street and South Central Park Avenue in Chicago to speak to Sanders' brother. (Am. Compl. ¶¶ 8-10.) [Dkt 16.] According to Plaintiffs, some Chicago police officers ("Defendants") stopped Plaintiffs without reasonable suspicion, searched them and searched Sanders' car. (*Id*. ¶¶ 11-12.) Plaintiffs allege that they were then

1

arrested, and Sanders' home was searched, all without probable cause. (*Id*. ¶¶ 18, 19, 32.) Sanders was charged with possession of cannabis, although those charges were subject to a *nolle prosequi*. (Defs.' Answer to Am. Compl. ¶¶ 20, 23.) [Dkt 24.] Defendant Officers O'Shaughnessy and D'Amato testified that they were conducting narcotics surveillance from an undisclosed location when they witnessed Sanders engage in a suspected drug transaction on the 3600 block of West Grenshaw. (Defs.' Jt. Resp. Pls.' Mot. Compel ("Defs.' Resp.") at 1-2.) [Dkt 78.] Plaintiffs contend that Defendants' testimony is a fabrication. In the present motion, Plaintiffs seek to compel Defendants to identify specifically that undisclosed surveillance location.

Plaintiffs had filed an earlier motion to compel Defendants to disclose the precise surveillance location. [Dkt 40.] In their response to that motion, Defendants argued that "the surveillance location privilege" protected that information from disclosure, and that Plaintiffs had not provided the court with a specific factual basis to justify compelling the information. (Defs.' Jt. Resp. at 4.) [Dkt 44.] Plaintiffs' earlier motion was denied without prejudice to Plaintiffs' renewing the motion following their depositions. [Dkt 49.] Plaintiff McKay and others were deposed, and Plaintiffs have now renewed their motion, citing in particular the depositions of defendant O'Shaughnessy and witness Barbara Cole. (*See* Pls.' Suppl. Mot. Compel.) [Dkt 74.] At the court's request, Plaintiffs provided a complete transcript of Ms. Cole's deposition. [Dkt 84.]

**DEPOSITION TESTIMONY**

At the depositions of O'Shaughnessy and D'Amato, Plaintiffs' counsel inquired about Defendants' ability to observe the alleged drug transaction, including questions about where the officers were positioned. O'Shaughnessy and D'Amato testified that they witnessed the suspected

2

drug transaction from a distance of 15 to 20 feet. (Defs' Resp., Ex. A, D'Amato Dep at 30; Pl.'s Mot., Ex. B, O'Shaughnessy Dep. at 26.) They further testified that they were inside a building, on the second floor, watching through a window. (D'Amato Dep. at 16, 38, 39; O'Shaughnessy Dep. at 20, 24, 26.) O'Shaughnessy testified that the surveillance spot was on the north side of the 3600 block of West Grenshaw. (O'Shaughnessy Dep. at 23.) D'Amato testified that from where he was, he could see Sanders' face. (D'Amato Dep. at 38.)

Significantly, D'Amato testified that the building where they were positioned was vacant, abandoned and open. (D'Amato Dep. at 27.) O'Shaughnessy testified that to his knowledge the building was not abandoned, but that the place where the officers conducted the surveillance was vacant, with no furniture. (O'Shaughnessy Dep. at 20, 23, 26.) He said that they did not have to be let in to the building because the rear door was open and unlocked. (O'Shaughnessy Dep. at 23.) The officers did not get permission from a building owner, resident or manager to use the space as a surveillance location. (D'Amato Dep. at 27; O'Shaughnessy Dep. at 24.) O'Shaughnessy also testified that the location had not been used as a surveillance location prior to or after July 9, 2006. (O'Shaughnessy Dep. at 22.) O'Shaughnessy did not know of any plans by any officers to use that location in the future. *(Id.)* D'Amato, however, testified that he believed that the location is still being used for surveillance. (D'Amato Dep. at 89.) Defendants' counsel objected to, and instructed his clients not to answer, questions about the specific surveillance location. (D'Amato Dep. at 16; O'Shaughnessy Dep. at 25, 33.)

Plaintiffs assert that Defendants' testimony regarding their surveillance location, rather than clarifying the location, disclosed enough information to make Plaintiffs certain that no such location existed on the day in question. Plaintiffs cite the testimony of Ms. Cole, a resident of 3638 W.

3

Grenshaw. (*See* Cole Dep. at 11-12.) Ms. Cole testified that she had lived at that address for 25 years, which included July 9, 2006. (*Id*. at 12.) She testified that her sister has lived on the second floor of her house for 3 to 4 years, also including July 9, 2006. (*Id*.) Ms. Cole also testified that there were no abandoned houses that fit Defendants' description of the location of Defendants' surveillance location. (*Id.* at 36-40.) Ms. Cole resided in her home on the date of Sanders' arrest, July 9, 2006.[1] (*Id.* at 37.) Ms. Cole also testified that on that date her mother resided at 3640 West Grenshaw, which is the house just to the west of Ms. Cole's, and that the three houses to the east of her home were also all occupied on that date. (*Id.* at 37-40.) Therefore, Plaintiffs assert, there were no abandoned houses that fit Defendants' description of their surveillance location on July 9, 2006, and Plaintiffs believe Defendants did not actually have such a surveillance location.

## DISCUSSION

**A.     Surveillance Location Privilege**

Defendants rely on their having witnessed Sanders' involvement in a drug transaction as the probable cause for arresting Plaintiffs and for conducting searches of Sanders' vehicle and home. Defendants' ability to see the claimed drug transaction is a major issue in this case. Defendants' refusal to disclose the precise location where they were at the time prevents Plaintiffs from obtaining full information about that part of the case.

Fed. R. Civ. P. 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." The parties do not dispute that the

---

[1]Ms. Cole did not state whether she was actually in her home on the date in question, but, rather, testified that she lived at that location at the time. (Cole Dep. at 37.)

information sought is relevant. Defendants argue instead that the information is not discoverable because it is privileged, and that Plaintiffs have failed to demonstrate their need for the information. Plaintiffs argue that even if the court recognizes a surveillance location privilege, the facts of this case do not support application of the privilege here.

Fed. R. Evid. 501 governs the applicability of privileges in federal courts:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

In a case like this, where the evidence sought is relevant to both federal and state law claims, federal common law controls questions of privilege. *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981). However, "comity 'impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004) (*quoting Memorial Hospital,* 664 F.2d at 1061).

Neither party cited, and the court did not find, any case decided by a federal court in the Seventh Circuit recognizing a surveillance location privilege. It also appears, however, that no court in the Seventh Circuit has ever explicitly refused to recognize a surveillance location privilege. A threshold question, then, is whether Defendants may invoke such a privilege.

Federal law has long recognized the informer's privilege, which is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations

of law to officers charged with enforcement of that law." *Roviaro v. U.S.*, 353 U.S. 53, 59 (1957). That privilege aims to encourage citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, as well as to maintain the informant's usefulness and to protect informants against reprisal. *Id.; U.S. v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994)*; Dole v. Local 1942, Intl. Brotherhood of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) (citations omitted); *U.S. v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981).

A number of federal circuits recognize a surveillance location privilege under federal common law in criminal cases, as an extension of the informer's privilege. *U.S. v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *U.S. v. Van Horn*, 789 F.2d 1492, 1507-08 (11th Cir. 1986); *U.S. v. Cintolo*, 818 F.2d 980, 1002, n. 13 (1st Cir. 1987). Illinois courts also recognize a surveillance location privilege, at least in criminal cases. *People v. Bell*, 869 N.E.2d 807, 818 (Ill. App. 2007); *People v. Quinn*, 772 N.E.2d 872, 875 (Ill. App. 2002); *People v. Knight*, 753 N.E.2d 408, 412-16 (Ill. App. 2001); *People v. Criss*, 689 N.E.2d 645, 649 (Ill. App. 1998)).

Courts recognizing the surveillance location privilege reason that it serves goals similar to those served by the informer's privilege. *Green*, 670 F.2d at 1155; *Harley*, 682 F.2d at 1020; *Van Horn*, 789 F.2d 1507-08; *Cintolo*, 818 F.2d at 1002, n. 13. Just as informants are able to assist in investigations only as long as their identities remain secret, hidden observation posts remain useful only as long as their locations are kept secret. *Green*, 670 F.2d at 1155; *see also Van Horn*, 789 F.2d at 1508. Both privileges are likewise concerned with the safety of the law enforcement officers and the citizens involved in the investigation. *Green*, 670 F.2d at 1155; *Harley*, 682 F.2d at 1020. Also, just as the informer's privilege encourages citizens to communicate their knowledge of crimes to police, the surveillance location privilege encourages citizens to allow the use of their property by

6

law enforcement. *Green*, 670 F.2d at 1155.

In addition to the informer's privilege, some federal circuits, including the Seventh Circuit, have recognized a broader "law enforcement techniques and procedures" privilege that protects law enforcement techniques and investigatory files. *See, e.g.*, *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007) (stating that "we deem it appropriate to extend the privilege we previously recognized for 'confidential government surveillance information' to 'law enforcement techniques and procedures'") (citations omitted); *In re U.S. Dept. of Homeland Security*, 459 F.3d 565, 569-71, n. 1 (5th Cir. 2006) (citing cases); *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). Like the informer's privilege, the law enforcement privilege shields law enforcement techniques and procedures from disclosure, to prevent interference with an investigation, and to protect both the law enforcement officers and the individuals involved in assisting with the investigation. *Dole*, 870 F.2d at 372 (discussing the informer's privilege); *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997). *See also, Lewis v. City of Chicago*, No. 04 C 3904, 2004 WL 2608302 at *1-2 (N.D. Ill. Nov. 16, 2004)(Schenkier, M.J.) (*citing In re. Dept of Investigation of City of New York*, 856 F.2d 481, 485 (2d Cir. 1988)).

Neither party cited, and the court did not find, any case from either federal or Illinois state courts applying the surveillance location privilege in the context of a civil case. However, the Seventh Circuit has recognized both the informer's privilege and the law enforcement privilege in civil as well as criminal cases. *Dole*, 870 F.2d at 372; *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). *See also Hudgins*, 175 F.R.D. at 514-15; *Lewis*, 2004 WL 2608302 at *1-2.

The surveillance location privilege is essentially a specific application of the law

7

enforcement privilege. It supports the goals of the informer's and law enforcement privileges: protecting the safety of the officers and citizens involved in an investigation and preserving the usefulness of a secret surveillance location as a tool of law enforcement. Because the law enforcement privilege can be invoked in a civil case, Defendants properly asserted a surveillance location privilege in this case.

B. **Plaintiffs' Need for the Surveillance Location Information Outweighs the Surveillance Location Privilege**

The informer's privilege belongs to the government "as a right and [the government] need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege." *Valles*, 41 F.3d at 358. Similarly, courts applying the surveillance location privilege do not require the government to make a showing that the building owner will likely be retaliated against if the position is revealed. *See Van Horn*, 789 F.2d at 1507; *Dole*, 870 F.2d at 372. However, the informer's privilege and the law enforcement privilege are qualified, not absolute; those privileges yield when the party seeking disclosure shows that its need for the information outweighs the policies underlying the privilege. *Dellwood Farms*, 128 F.3d at 1125; *Dole,* 870 F. 2d at 372-73 (quoting *Rovario,* 353 U.S. at 60-61); *see also Valles*, 41 F.3d at 358.

In criminal cases, the issue focuses on the defendant's constitutional rights to a fair trial and to confront the witnesses against him. *See Van Horn*, 789 F.2d at 1507-08; *U.S. v. Garey*, 2004 WL 2663023 at *2-3 (M.D. Ga. Nov. 15, 2004) (Land, J.); *U.S. v. Foster*, 986 F.2d 541, 544 (D.C. Cir. 1993). The court considers whether the defendant "needs the evidence to conduct his defense" and whether there are "no adequate alternative means of getting at the same point." *Harley*, 682 F.2d at 1020. Similarly, Illinois courts evaluate "[t]he need for disclosure . . . on a case-by-case basis,

8

balancing the public interest with the [criminal] defendant's need to prepare a defense." *Quinn*, 772 N.E.2d at 875. Crucial to the analysis in criminal cases is the protection of a criminal defendant's Sixth Amendment right to confront the witnesses against him, including the right to cross-examine. *Id.*, at 874-75; *Knight*, 753 N.E.2d at 415-16.

The party in a civil case seeking disclosure of information protected by the informer's privilege or the law enforcement privilege has a heavier burden than a criminal defendant because "not all constitutional guarantees which inure to criminal defendants are similarly available to civil defendants." *Dole*, 870 F.2d at 372. *Accord Dellwood Farms*, 128 F.3d at 1125 (stating that "there ought to be a pretty strong presumption against lifting the [law enforcement investigatory] privilege" in a civil case). "The district judge must take a balanced approach and in the end decide whether the party opposing the privilege has . . . a need greater than the important policy consideration underlying the privilege." *Dole*, 870 F.2d at 373.

Among the factors to be considered in deciding whether to pierce the surveillance privilege are: whether knowing the exact location of the surveillance position is essential for a party's case; whether there are alternative means for the party seeking disclosure to obtain the desired information; whether the party had sufficient opportunity to cross-examine the police officer regarding, for example, his ability to see the relevant events or to identify the individuals involved; whether the surveillance location continues to be used by the police; and whether disclosure of the position will deter other residents in the neighborhoods from allowing the police to use their property. *Harley*, 682 F.2d at 1020; *Cintolo*, 818 F.2d at 1002-03.

This case presents an unusual set of circumstances. Plaintiffs have put forward evidence seeming to eliminate any location that would fit O'Shaughnessy's and D'Amato's descriptions of

9

the surveillance location. Resolving the dispute requires disclosure of the exact surveillance location. There is no alternative means for Plaintiffs to get that information; only Defendants have it. Although Plaintiffs' counsel questioned the defendant officers about visibility from the surveillance location, the angle and the distance, those facts do not resolve the question of how Defendants could have been in any abandoned building at the distance they described from the alleged transaction, when Ms. Cole testified that there was no such building.

No residents were aware of the use of the surveillance location, so the disclosure of the location would put no one at risk, and no neighborhood resident will be deterred from allowing the police to use the resident's property.

In the unusual circumstances of this case, Plaintiffs' need for knowledge of the precise surveillance location outweighs law enforcement's need to withhold that information. The privilege Defendants claim, while valid, is overcome, and Defendants must answer Plaintiffs' discovery on that point. However, in light of the officers' testimony that the location might be used in the future, Defendants' responses disclosing the information will be held by Plaintiffs' counsel "attorneys' eyes only," with any further disclosure only upon further order of the court.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel discovery is granted. The information produced, however, will be held by Plaintiffs' counsel "attorneys' eyes only."

**IT IS SO ORDERED.**

                                                     **Geraldine Soat Brown**
                                                   **United States Magistrate Judge**

April 3, 2008